# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CANYON FURNITURE COMPANY,** | § § | |
| PLAINTIFF, | § § | |
| V. | § § | |
| **DANIEL RUEDA SANCHEZ, JULIO ALFONSO RODRIGUEZ VALDEZ, FURNITURE INDUSTRIES SERVICES, INC., & DISENOS INNOVADORES DE BAJA CALIFORNIA, S. de R.L. de C.V.,** | § § § § § § § | CIVIL ACTION No. 5:18-cv-00753-OLG |
| DEFENDANTS. | § | |

## PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

In connection with the jurisdictional discovery allowed by this Court (Dkt. 18), Plaintiff Canyon noticed the depositions of Defendants. Fed R. Civ. P. 30(b)(6) obligated Defendants Furniture Industries Services, Inc. ("FIS") and Diseños Innovadores de Baja California, S. de R.L. de C.V ("Disneos") to designate an individual who was prepared to testify on the noticed topics. Yet FIS and Disneos produced corporate representatives who had never seen the deposition topics and knew nothing about their respective companies. A failure to present a prepared representative is a failure to appear under FRCP 37(d)(1)(A)(i). Separately, Defendant Julio Rodriguez was instructed not to answer questions about actions he took that made it possible for Defendants to make and sell furniture in Texas, preventing Canyon from obtaining jurisdictional evidence to oppose Defendants' Second Amended Motion to Dismiss. Canyon seeks sanctions under FRCP 37(d) and an order compelling testimony of Rodriguez under Rule 37(a).

## I.   LEGAL STANDARD

*A.   A Rule 30(b)(6) corporate representative must be prepared to testify on the noticed topics.*

Fed. R. Civ. P. 30(b)(6) allows depositions of organizations through a notice directed to that organization "that must describe with reasonable particularity the matters for examination." In response, the noticed entity must "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify."

A Rule 30(b)(6) designated representative must prepare to answer questions on the topics in the notice. Under Fifth Circuit law:

> the deponent must make a conscientious good-faith endeavor **to designate the persons having knowledge** of the matters sought by [the party noticing the deposition] **and to prepare those persons** in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters. [T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. **The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.**

*Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (internal citations and quotations omitted) (emphases added).[1]

---

[1] See also, Resolution Tr. Corp. v. S. Union Co., 985 F.2d 196, 197 (5th Cir. 1993) (affirming sanctions after holding that the burden of identifying responsive witnesses is on the corporation); Netsales, Inc. v. FesteCapital Management, LLC, No. A-07-CV-496 LY, 2007 WL 9710173, at *4 (W.D. Tex. July 5, 2007) (requiring second deposition of corporate representative who "answered 'I don't know' or 'I don't recall' to well over a hundred questions", threatening "significant sanctions" if corporate representative failed "to educate himself sufficiently to answer [movant's] inquiries on the topics set out" and admonishing representative that "[i]f he does not now know the answers to the questions, he must prepare himself with reasonable diligence to learn the answers prior to the deposition"); Robinson v. Nexion Health At Terrell, Inc., 312 F.R.D. 438, 441 (N.D. Tex. 2014) (holding corporation had "responsibility to fully prepare [witness] to give complete and fruitful answers to the extent such information was reasonably available to the company."); Orchestratehr, Inc. v. Trombetta, No. 3:13-CV-2110-P, 2015 WL 11120526, at *4 (N.D. Tex. July 15, 2015) (finding corporate representative deficient where he admitted he was not prepared on certain topics).

### B. *Failure to present a prepared corporate representative is a failure to appear at the deposition and is sanctionable under Rule 37.*

Designation of an individual who is unprepared or unable to answer questions on the topics in the notice is a failure to appear for deposition and sanctions may be imposed.

> When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then **the appearance is, for all practical purposes, no appearance at all**.

*Resolution Tr. Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) (emphasis added).

Rule 37(d) authorizes a Court to impose sanctions when a corporate representative fails to appear at a deposition. FRCP 37(d)(1)(A) ("The court . . . may, on motion, order sanctions if: (i) a . . . a person designated under Rule 30(b)(6) . . . fails, after being served with proper notice, to appear for that person's deposition").[2]

Appropriate sanctions for failure to appear include an award of reasonable expenses, such as the costs of taking the deposition and reasonable attorney's fees. *Robinson v. Nexion Health At Terrell, Inc.*, 312 F.R.D. 438, 441 (N.D. Tex. 2014) (awarding attorney's fees and costs incurred in preparing for and taking the deposition of an inadequate corporate representative and the costs of preparing the motion and reply brief); *Netsales, Inc. v. FesteCapital Management, LLC*, No. A-07-CV-496 LY, 2007 WL 9710173, at *4 (W.D. Tex. July 5, 2007) (awarding partial attorney's fees and out of pocket costs incurred in taking second deposition of corporate representative).[3] Other courts have struck or precluded testimony from the

---

[2] See, e.g. Resolution Tr. Corp. v. S. Union Co., 985 F.2d 196, 197 (5th Cir. 1993) (imposing sanctions); Robinson v. Nexion Health At Terrell, Inc., 312 F.R.D. 438, 441 (N.D. Tex. 2014).
[3] See also Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 304 (3d Cir. 2000) (affirming award of monetary sanctions under Rule 37 for unprepared Rule 30(b)(6) witness);  In re Vitamins Antitrust Litig., 216 F.R.D. 168, 174 (D.D.C. 2003) ("Monetary sanctions are mandatory under Rule 37(d) for failure to appear by means of wholly failing to educate a Rule 30(b)(6) witness, unless was substantially justified."); Cont'l Cas*. Co. v. First Fin. Employee Leasing, Inc.*, 716 F. Supp. 2d 1176 the conduct,

corporation on any of the subjects that the corporation failed to present a knowledgeable corporate representative.[4]

### C. The Court may compel a witness to answer questions that the witness refused to answer at the deposition.

Rule 37(a)(3) authorizes a court to enter an order compelling a witness to answer a question at a deposition. Local Rule 30(b) states that "An attorney who instructs a deponent not to answer a question shall state, on the record, the legal basis for the instruction consistent with Federal Rule of Civil Procedure 30(d)(1)" and that a violation of this rule "may be deemed to be a violation of a court order and may subject the violator to sanctions."

## II.     FACTUAL BACKGROUND

### A. The Corporate Deponents Failed To Provide Answers To The Properly Noticed Topics.

Canyon served nearly identical deposition notices under Rule 30(b)(6) on FIS and Disenos and identified ten topics. *See* FIS Deposition Notice, deposition Exhibit 30, a true and correct copy is attached as Exhibit 1; Disenos Deposition Notice, deposition Exhibit 39, a true and correct copy is attached as Exhibit 2. Neither defendant objected to the topics, waiving any objection.[5]

---

1193 (M.D. Fla. 2010) (awarding costs of and attorney's fees associated with taking the 30(b)(6) deposition of an unprepared witness as a sanction under Rule 37(d)(1)).

[4] Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A., 2007 WL 4410370, at *8 (N.D.Tex. Dec.14, 2007) ("Federal courts have interpreted [Rule 30(b)(6) ] as prohibiting a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject."); Function Media, L.L.C. v. Google, Inc., No. 2:07-CV-279-CE, 2010 WL 276093, at *3 (E.D. Tex. Jan. 15, 2010) (precluding certain testimony at trial as sanction for failure to present prepared corporate representative).

[5] Orchestratehr, Inc. v. Trombetta, No. 3:13-CV-2110-P, 2015 WL 11120526, at *2 (N.D. Tex. July 15, 2015) (finding that objections waived because: "A party cannot fail to raise objections to Rule 30(b)(6) deposition notices, present a representative to testify on those topics, and then later raise objections to the scope or propriety of the topics.").

Canyon noticed the deposition of FIS in Chula Vista, California, FIS's principal place of business.[6] But Defendants demanded FIS be deposed in Mexico through an English/Spanish translator. Defendants then moved the Court for protection, repeating that demand. (Dkt. 19). Faced with limited time, Canyon agreed to incur the burden and expense of deposing FIS in Mexico through a translator. Canyon also supplied a translator for Disenos's deposition.

On September 6, 2018, Jose Gaitan Gallardo ("Mr. Gaitan") appeared for deposition as the designated corporate representative of Disenos.[7] The topics noticed by Canyon, in summary form, included:

- Organizational structure of Disenos (Topic 1).
- Disenos relationship with FIS (Topic 2).
- Ownership of Disenos (Topic 3).
- Disenos business transactions or connections with the state of Texas (Topic 4).
- Disenos relationship with Mr. Rueda and Mr. Rodriguez (Topic 5).
- Disenos manufacturing, invoicing, or shipping of furniture that was sold or delivered to the state of Texas. (Topic 6).
- Direct or indirect sales by Disenos to Bob Mills Furniture or other retailer with Texas sales (Topic 7).
- Revenues derived from sales to or deliveries to Texas. (Topic 8).
- Marketing materials used for sales in Texas. (Topic 9).
- Location of bank accounts. (Topic 10).[8]

Mr. Gaitan was unqualified and unprepared to serve as a corporate representative on any of the above topics and in fact was unaware of the topics:[9]

Q    So are you prepared to give testimony on each of the topics that are listed in Exhibit 39 [the deposition notice]?
A    I don't know what this is about. (Gaitan Dep. 16:15-17).
Q    What did you do to prepare yourself to testify today?

---

[6] Defendant Rueda has filed multiple declarations swearing FIS is based in Chula Vista. See Rueda Decl. ¶14 (Dkt 16) ("At the time of filing of this action, all other times and at the present, Furniture Industries Services, Inc. ("FIS") was and is a California corporation having its principal place of business at 6051 Business Center Ct 4-273 Chula Vista Ca 92154"); Rueda Decl. ¶14 (Dkt 21-1) (same).
[7] Gaitan Dep. 10:10-17 (Gaitan is the "legal representative" of Disenos); Gaitan Dep. 15:21-23 (Gaitan understands he is to testify on behalf of Disenos).
[8] The specific topics in full are set forth in the Notice of Depositions, marked as Deposition Ex. 39, and attached hereto as Exhibit 2.
[9] Citations to Mr. Gaitan's deposition are attached as Exhibit 3. In addition to the testimony set forth herein, other questions and answers that Gaitan was unable to answer are highlighted therein.

A Nothing. (Gaitan Dep. 15:15-17).
Q Did you discuss the fact that you would come and give testimony today with anyone else?
A No. (Gaitan Dep. 16:2-4).
Q Did you review any documents to learn things about the past business of Disenos to prepare for today?
A No. (Gaitan Dep. 16:5-7).
Q Did you meet with your lawyer to talk about testimony today?
A Not about my testimony. (Gaitan Dep. 16:8-10).

**Mr. Gaitan lacked personal knowledge to answer questions about Disenos' manufacture and sale of furniture for delivery and resale in Texas.**

Q Are you familiar with the operations and the business of Disenos before January '18 -- sorry -- January 2018?
A No. (Gaitan Dep. 16:11-14)
Q Before you got involved in January of 2018, do you know what kind of furniture Disenos made for sale in the United States?
A I don't know. (Gaitan Dep. 31:15-18)
Q Has Disenos ever manufactured bunk beds for children?
A I don't recall. (Gaitin Dep. 43:3-12)
Q Is any of the furniture that Disenos made shipped to the state of Texas?
A I don't know.
Q And to make sure my question's understandable, I'm including furniture where the customer picks up at the border or at Disenos and takes to Texas.
A I don't know. (Gaitan Dep. 32:18-24)
Q Do you know if Disenos sold furniture to a company called Bob Mills Furniture in 2018 since you got involved?
A I don't recall. (Gaitan Dep. 31:19-22)
Q Who would know at Disenos if furniture has been sold to Bob Mills?
A I don't know. (Gaitan Dep. 31:23-25)
Q Have you had any involvement with any manufacturing of furniture by Disenos for sale to Bob Mills?
A I don't know. (Gaitan Dep. 16:22-25)
Q Are you familiar with the shipping process for furniture to Bob Mills from Disenos?
A No. (Gaitan Dep. 17:1-3)
Q Do you know anything about what kind of business Disenos did before January 2018?
A No, not really.
Q Do you know who Disenos's customers were before January 2018?
A Not really. (Gaitan Dep. 24:21-25:1)

**Mr. Gaitan could not testify about the relationship between Disenos and FIS.**
Q Did Disenos do business with Furniture Industries Services before January 2018?
A I don't know.  I don't remember. (Gaitan Dep. 25:5-7)
Q Before January 2018, was there any common ownership between Furniture Industries Services and Disenos?
A I don't recall.  I don't know. (Gaitan Dep. 20:23-21:1)

6

Q      Do you know when Disenos began doing business with Furniture Industries Services?
A      No. (Gaitan Dep. 26:3-5).

**Mr. Gaitan knew nothing about Mr. Rueda or Mr. Rodriguez's involvement with Disenos.**
Q      Did Mr. Rueda ever have any ownership or involvement with Disenos?
A      I don't recall.
Q      Was Mr. Rueda ever an employee of Disenos?
A      I don't know. (Gaitan Dep. 39:8-39:15)
Q      Has Mr. Rodriguez ever been an owner of Disenos, to your knowledge?
A      I don't recall. (Gaitan Dep. 40:24-45:1)
Q      Has Mr. Rodriguez ever been a manager or supervisor at Disenos?
A      I don't know. (Gaitan Dep. 40:5-7)

Similarly, Gustavo Pedroza Esparza ("Mr. Pedroza") appeared for deposition as the designated corporate representative of FIS on the topics noticed by Canyon.[10] Canyon noticed FIS on the same topics as Disenos.[11] Mr. Pedroza was unprepared and unqualified to serve as a corporate representative as the following examples illustrate:[12]

- He had not seen the deposition notice before the deposition. (Pedroza Dep. 14:24-15:5)
- He had not reviewed the topics. (Pedroza Dep. 15:6-8).
- He did not prepare for the deposition, he "just came." (Pedroza Dep. 15:9-10).
- He did not review documents. (Pedroza Dep. 15:11-13).

Among many others, Mr. Pedroza was unprepared and unable to answer any of the following questions:

- When FIS was formed (Pedroza Dep. 23:2-3).
- FIS's business address (Pedroza Dep. 29:14-22).
- Who prepared FIS's invoices (Pedroza Dep. 36:21-23).
- Who sent or prepared FIS invoices to Bob Mills (Pedroza Dep. 38:2-6, 58:8-9).
- When sales to Bob Mills started (Pedroza Dep. 39:15-17).
- FIS's sales amounts (Pedroza Dep. 41:7-10).
- The owners or officers of FIS from 2015 to 2017 (Pedroza Dep. 45:15-18, 46:3-8).
- What products FIS sold to Bob Mills (Pedroza Dep. 48:8-15, 49:5-19).

---

[10] Pedroza Dep. 14:19-21 (Q: "You understand you are here as the corporate representative of FIS; correct?" A: "That's right.").

[11] *See* Deposition Exhibit 30 attached as Exhibit 1.

[12] Deposition citations for Gustavo Pedroza Esparza, as corporate representative of FIS are attached as Exhibit 4 and referred to herein as "Pedroza Dep." All of the portions cited are highlighted in Exhibit 4 for the Court's review.

- Who handled sales or billing for FIS from 2015 to 2017 (Pedroza Dep. 51:18-23, 52:17-53:1).
- Who exchanged emails with Bob Mills on behalf of FIS (Pedroza Dep. 53:10-54:1, 54:19-20, 57:1-16.).
- If Rodriguez had involvement with FIS from 2015-2017 (Pedroza Dep. 71:13-24).

### B. Defendant Julio Rodriguez improperly refused to answer questions that pertained to jurisdiction.

On September 7, 2017, Canyon took the deposition of Defendant Julio Rodriguez. Canyon sought to explore intentional acts by Mr. Rodriguez that enabled or directly contributed to Defendants' sales or delivery of copycat furniture in Texas because such conduct is relevant to personal jurisdiction.[13] In particular, Canyon sought testimony regarding two allegations: First, did Mr. Rodriguez secretly divert money from Canyon's bank account to FIS[14] to fund manufacture of copycat furniture sold in Texas. Mr. Rodriguez had already testified that Disenos had inadequate capital and was underfunded. (Rodriguez Dep. 47:1-18). Second, did Mr. Rodriguez direct Canyon to pay invoices for shipping services rendered to Disenos in sending trucks of furniture to the US/Mexico border for delivery to Bob Mills in Texas and then manipulated Canyon's records to hide the nature of the expense.[15]

In response to questions on these subjects, counsel for Mr. Rodriguez instructed him not to answer or Mr. Rodriguez otherwise refused to answer the questions on the basis that they were not relevant to jurisdiction. Some of the specific questions Rodriguez refused to answer include:[16]

---

[13] *See, e.g. Calder v. Jones*, 465 U.S. 783 at 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (jurisdiction based on acts outside the state where the consequences "are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."); *Eagle Metal Prod., LLC v. Keymark Enterprises, LLC*, 651 F. Supp. 2d 577, 592–96 (N.D. Tex. 2009) (applying effect test in misappropriation of trade secrets); *Arthur v. Stern*, No. CIV.A. H-07-3742, 2008 WL 2620116, at *10 (S.D. Tex. June 26, 2008) (co-conspirators actions outside the state are relevant for jurisdiction).

[14] Canyon's First Amended Petition ¶¶32-35, filed in Bexar County District Court and incorporated into this Court's docket through Defendants' removal and located at docket 1-11.

[15] Canyon's Motion to Extend TRO, at 14 (Dkt 2) & Goldstein Decl. attached thereto ¶23.

[16] Excerpts from the deposition of Julio Rodriguez Valdez are attached hereto as Exhibit 5.

- Q   Was that wire used -- was the $45,000 from the wire from Canyon's bank account to Furniture Industries Services used to help Disenos produce furniture that was then sold to Bob Mills Furniture -- . . . -- in Texas? (Rodriguez Dep. 68:7-10,13)
- Q   And you authorized that that wire be made so that FIS could use those funds to fund Disenos in making furniture that was sold to Bob Mills in Texas; is that correct? (Rodriguez Dep. 71:2-5)
- Q   And you authorized that this $35,000 wire be made to Furniture Industries Services so that it could fund Disenos' ability to manufacture and sell furniture to Bob Mills in Texas; isn't that right? (Rodriguez Dep. 73:4-7)
- Q   And this $45,000-and-some-odd transfer was made to Furniture Industries Services for the purpose of funding it so that it could allow Disenos to make bunk beds that would be sold to Bob Mills in Texas, was it not? (Rodriguez Dep. 75:6-10)
- Q   And you actually authorized and initiated this wire of $22,000 to Furniture Industries Services so that Furniture Industries Services could fund Disenos making bunk beds that were then sold to Bob Mills Furniture in Texas, did you not? (Rodriguez Dep. 77:7-11)
- Q   And isn't it true that without you wiring money from Canyon to FIS, FIS would not have had enough money to make bunk beds to sell them to Bob Mills Furniture? (Rodriguez Dep. 73:11-13)
- Q   But it is true that without you wiring money from Canyon to FIS at various points in 2017, FIS would not have had enough money to make the bunk beds – to fund the making of bunk beds that Disenos made that were then sold to Bob Mills in Texas? (Rodriguez Dep. 74:2-6)
- Q   And this April 17th wire from Furniture Industries Services to Canyon was made as the result of Furniture Industries Services obtaining funds from selling bunk beds to Bob Mills Furniture in Texas, was it not? (Rodriguez Dep. 76:7-11)
- Q   And the reason that wire was transferred was because FIS had received monies from its sales to Bob Mills of Disenos Furniture; is that correct? (Rodriguez Dep. 69:20-22)
- Q   . . . This is a packing list that shows a bill to Bob Mills Furniture, a ship-to location in Fort Worth, Texas; is that correct? (Rodriguez Dep. 59:20-24)
- Q   . . . This is a packing list that shows a bill to Bob Mills Furniture, a ship-to location in Fort Worth, Texas; is that correct? (Rodriguez Dep. 60:8-9)
- Q   In actuality, the supporting documentation for this invoice shows that what really occurred is that FIS shipped bunk beds to Bob Mills in Fort Worth, Texas; isn't that true? (Rodriguez Dep. 81:18-21)

Because the above questions relate directly to acts by Mr. Rodriguez that contributed to Defendants' sales or delivery in Texas, they are within the scope of jurisdictional discovery under the effects test and under conspiracy.[17] Because these questions are within the scope of discovery authorized by the Courts' order (Dkt 15), they should have been answered.

---

[17] *See* note 12; *see also* Canyon's Opposition to Defendants' Second Amended Motion to Dismiss, Section V.A.2 & 3, at pp 14-21. (dkt 25).

### C. The Court should award Canyon its fees and costs for the corporate representative depositions and compel answers from Mr. Rodriguez

Canyon incurred substantial costs to take these depositions, including court reporter, travel costs, and translators for the Rule 30(b)(6) depositions of FIS and Disenos. Canyon also incurred attorney's fees for deposition preparation and attendance and in bringing this motion. Rule 37(d) authorizes the Court to award these costs as sanctions.[18] Canyon seeks an order awarding its costs and fees associated with the FIS and Disenos depositions and in bringing this motion. Canyon also seeks an order under Rule 37(a) compelling Mr. Rodriguez to answer questions regarding his actions and for Defendants to present Mr. Rodriguez for further deposition at Defendants' expense in San Antonio.

Further, if the Court determines that Canyon has not presented sufficient evidence to support personal jurisdiction over any of the Defendants, Canyon requests that the Court: (1) order FIS and Disenos to present corporate representatives who are prepared to testify on all of the noticed topics at Defendants' expense, (2) order Defendant Rodriquez to be deposed at Defendants' expense in San Antonio, and (3) allow Canyon to submit supplemental briefing and evidence in opposition to Defendants' Motion to Dismiss.

### III. CONCLUSION

For all the foregoing reasons, Canyon requests that the Court enter an order awarding such other fees and expenses incurred as are necessary and just and compelling Mr. Rodriguez to answer questions on the topics above.

---

[18] *Robinson v. Nexion Health At Terrell, Inc.,* 312 F.R.D. 438, 442-3 (N.D. Tex. 2014) (awarding attorney's fees and costs as a sanction for failure to present a prepared corporate representative); *see also* note 2, *infra*.

Dated: October 5, 2018	DIAMOND MCCARTHY LLP

    */s/ Jason Fulton*
Allan B. Diamond
TX State Bar No. 05801800
Rebecca A. Muff
TX State Bar No. 24083533
Brian R. Hogue
TX State Bar No. 24094725
Two Houston Center
909 Fannin, 37th Floor
Houston, Texas 77010
(713) 333-5100 Telephone
(713) 333-5199 Facsimile
adiamond@diamondmccarthy.com
rmuff@diamondmccarthy.com
brian.hogue@diamondmccarthy.com

Jason P. Fulton
State Bar No. 24040936
2711 N. Haskell Avenue, Suite 3100
Dallas, Texas 75204
(214) 389-5300 Telephone
(214) 389-5399 Facsimile
jfulton@diamondmccarthy.com

*Counsel for Canyon Furniture Company*

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 14th and again on the 17th of September, 2018, I left voicemail messages for counsel to Defendants requesting to confer regarding the motion and followed up with email messages on those days as well identifying the motion and the grounds for the motion. Opposing counsel indicated by email that he opposed the motion. Opposing counsel did not respond by return telephone call to my knowledge.

      */s/ Jason Fulton*
      Jason Fulton

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of October, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Charles W. Hanor
750 Rittiman Rd.
San Antonio, TX 78209
(210) 829-2002 Phone
(210) 829-2001 Fax
chanor@hanor.com

      */s/ Jason Fulton*
      Jason Fulton