UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CANYON FURNITURE COMPANY, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | |
| | § | |
| DANIEL RUEDA SANCHEZ, JULIO | § | CIVIL ACTION No. 5:18-cv-00753-OLG |
| ALFONSO RODRIGUEZ VALDEZ, | § | |
| FURNITURE INDUSTRIES SERVICES, | § | |
| INC., & DISENOS INNOVADORES DE | § | |
| BAJA CALIFORNIA, S. de R.L. de C.V., | § | |
| | § | |
| DEFENDANTS. | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Canyon Furniture Company ("Canyon") files this Second Amended Complaint[1] against Defendants Daniel Rueda Sanchez, Julio Alfonso Rodriguez Valdez (together, "Individual Defendants"), Furniture Industries Services, Inc., and Diseños Innovadores de Baja California, S. de R.L. de C.V. (collectively with Individual Defendants, "Defendants").

### I.    PRELIMINARY STATEMENT

1.    Plaintiff Canyon Furniture Company, a Florida corporation, creates unique designs and plans for a wide variety of quality home furniture.  In certain geographical areas – including Texas – Canyon offers its unique designs exclusively through Rooms To Go and Rooms To Go Kids stores (collectively "RTG"), which have three locations in Bexar County alone.  Canyon has been very successful in offering its products in this manner. Defendants Daniel Rueda Sanchez (a former manager of Canyon's plant in Mexico) and Julio Alfonso Rodriguez Valdez (Canyon's former Chief Financial Officer) have been illegally exploiting

---

[1] Pursuant to Local Rule CV-65, Plaintiff will separately file its Request for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction, which, along with all verifications and affidavits in support thereof, is incorporated herein as if set forth in its entirety.

Canyon's success by misappropriating furniture designs, manufacturing processes, engineering information, supplier list, pricing, financial information, merchandise information sheets, furniture assembly instruction manuals, customer lists, and component furniture parts, among other trade secret and proprietary assets, and using Canyon's trade secret information and assets to design, manufacture and sell such furniture to third party furniture retailers (such as Bob Mills Furniture of Texas) by and through their corporations, Defendants Furniture Industries Services, Inc. ("FIS") and Diseños Innovadores de Baja California, S. de R.L. de C.V. ("Disenos").

2.      Defendants' illicit actions are brazen and obvious. For example, Defendants misappropriated the designs and plans for Canyon's Creekside Loft Bunk:

Plaintiff Canyon Furniture Company's Design
Sold by Rooms To Go Kids

Defendants' Copied Furniture Design
Sold by Bob Mills Furniture



Creekside Charcoal Twin/Full Step Bunk Bed with Desk and Chest




Journey Loft Ash Twin Over Full Bed,
Mattress FREE

Defendants did not merely limit themselves to misappropriating Canyon's trade secrets, however; Defendants also engaged in a conspiracy to defraud Plaintiff by various means, including transferring funds in Canyon's bank account to FIS, without Canyon's knowledge or consent. These transfers amounted, in essence, to unauthorized, interest-free loans to Canyon's competitor. To hide such illegal transfers from Canyon, false accounting journal entries were made in Canyon's general ledger, making it appear that the cash transfers were to purchase

inventory, when in fact, no such inventory was received in connection with the transfers. Altogether, more than $260,000 was transferred from Canyon's accounts to FIS. Although FIS eventually repaid the unauthorized transfers (before Canyon discovered the illicit transactions), such actions deprived Canyon of the use of such funds for a period of time and falsely inflated inventory accounts and understated payables and receivables, which further damaged Canyon's ability to operate its plant efficiently. Importantly, these wrongful transfers also funded Defendants' wrongful business activities.

3.     Additionally, Defendants stole from Canyon by: (a) directing workers at Canyon's plant in Mexico to divert component parts, paint, hardware, wood, rails, machinery, and solvents from the plant to Disenos; (b) having Canyon pay shipping charges for Disenos to ship Disenos's copied furniture; and (c) causing workers at Canyon's plant in Mexico to remove finished pieces of furniture, machinery, equipment, and forklifts from the plant and send them to Disenos.

4.     The Court must stop Defendants' unlawful actions. In addition to actual and exemplary damages for Defendants' misappropriation of Plaintiff's trade secret information, unfair competition, breaches of fiduciary duties, breaches of confidentiality, breaches of loyalty, fraud, and unjust enrichment, Plaintiff seeks a temporary restraining order, a preliminary injunction, and a permanent injunction to stop any further exploitation pending the adjudication of the merits of Plaintiff's case. The injunction that Plaintiff seeks is authorized by Fed. R. Civ. P. 65 and by Tex. Civ. P. Rem. Code § 134A.003, which provides for injunctive relief for "actual or threatened misappropriation" of trade secrets, and by common law. *See, e.g., U.S. Sporting Prod., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 219–20 (Tex. App.—Waco

1993, writ denied) (noting injunctive relief is one of several remedies available for common law misappropriation).

## II.     PARTIES

5.     Plaintiff Canyon Furniture Company is a Florida for-profit corporation whose principal place of business is Florida, and is a citizen of Florida.

6.     Daniel Rueda Sanchez, an individual citizen and resident of California, may be served with process at his usual place of abode at 819 Chervil Ct., Chula Vista, CA 91910, or wherever defendant may be found.

7.     Julio Alfonso Rodriguez Valdez, an individual citizen and resident of Tijuana, Baja California, Mexico, whose usual place of abode is at Circuito Loma Dorada #19525, Fraccionamiento Loma Dorada, Tijuana, BC, Mexico.  Julio Alfonso Rodriguez Valdez may be served with process through the Hague Convention and/or by serving the Texas Secretary of State pursuant to Tex. Civ. Prac. & Rem. Code § 17.044(b), because (1) the Secretary of State is the agent for service on Rodriguez, (2) Rodriguez engages in business in Texas by virtue of selling furniture in Texas to one or more Texas retailers who thereafter sell to Texas consumers, (3) Rodriguez does not maintain a regular place of business in Texas, (4) Rodriguez does not have a designated agent for service of process, and (5) this lawsuit arises from Rodriguez's business in Texas.  Rodriguez is represented by counsel for the other Defendants, who has refused to accept service on behalf of any of the Defendants.

8.     Furniture Industries Services, Inc. is a California corporation doing business in Bexar County, Texas that can be served through its registered agent as follows: Furniture Industries Services, Inc., c/o Berena Barajas, its Registered Agent, 2493 Roll Dr. 210-554, San Diego, CA 92154.  Furniture Industries Services, Inc. is a citizen of California.

9.      Diseños Innovadores de Baja California, S. de R.L. de C.V. is a Mexican corporation located at Av. Roberto de La Madrid 1500-B Tijuana Baja California Norte 22170, with its principal place of business in Tijuana, Baja California, Mexico. Disenos is a citizen of Mexico.  As a foreign corporation organized and existing under the laws of Mexico, Disenos may be served with process through the Hague Convention and/or by serving the Texas Secretary of State pursuant to Tex. Civ. Prac. & Rem. Code § 17.044(b), because (1) the Secretary of State is the agent for service on Disenos, (2) Disenos engages in business in Texas by virtue of manufacturing furniture that is sold in Texas to Texas consumers, (3) Disenos does not maintain a regular place of business in Texas, (4) Disenos does not have a designated agent for service of process, and (5) this lawsuit arsise from Disenos's business in Texas.  Disenos is represented by counsel for the other Defendants, who has refused to accept service on behalf of any of the Defendants.

### III.      JURISDICTION

10.      This action was originally filed in Texas state court.  Defendants then removed to this Court.  This Court has diversity jurisdiction over this suit pursuant to 28 U.S.C § 1332(a)(1) and (2) because the Plaintiff is a citizen of Florida and the Defendants are citizens of Mexico and California and the amount in controversy exceeds $75,000.

11.      This Court has personal jurisdiction over Defendants because each of the Defendants has engaged in efforts to disclose or use Canyon's trade secrets to seek profit from sales of the Canyon copied furniture in Texas.  This Court also has personal jurisdiction over Defendants because the Defendants have placed their copied products into the stream of commerce with the intention that they will be sold in Texas.  Specifically, the Individual Defendants have (1) caused Disenos to manufacture, sell, and distribute furniture and (2) caused

FIS to sell the furniture to retailers that operate their stores in Texas, such as Bob Mills Furniture stores located throughout Texas, including in San Antonio.

12.     Disenos and FIS, acting through their member/officer Rueda and other employees, actively solicited business in Texas by emailing buyers at Bob Mills Furniture to offer for sale a "youth furniture product line" and resulting in Bob Mills Furniture asking that FIS and Disenos ship samples of their furniture to Texas; accepting bunk bed purchase orders from Bob Mills Furniture showing a "Ship To" address in Fort Worth, Texas; shipping those bunk beds to a Bob Mills Furniture distribution center in Fort Worth, Texas; creating invoices requesting payment for those shipments to Bob Mills Furniture showing "Ship To" addresses in Fort Worth and Flower Mound, Texas; and selling Bob Mills Furniture copied and/or stolen furniture that all Defendants knew or should have known would end up in Bob Mills Furniture stores throughout Texas.

13.     Moreover, this Court has personal jurisdiction over Defendants Rodriguez and Disenos because in entering into the relationship with FIS and Rueda – which relationship included Rodriguez's co-ownership in Disenos with Rueda; Rodriguez causing Canyon to make unauthorized "loans" to FIS and FIS later repaying those "loans" so that Rodriguez could hide them; Rodriguez falsifying documents and causing Canyon to pay for a portion of the shipping charges Disenos incurred to ship furniture from Disenos to a Bob Mills Furniture distribution center in Fort Worth, Texas; Disenos agreeing to manufacture furniture for FIS to sell to Bob Mills Furniture (which has 7 of its 9 stores in Texas); and Rodriguez's actual knowledge that Disenos's only customer in 2016 was Bob Mills Furniture, which Rodriguez also knew was a former customer of Canyon – both Rodriguez and Disenos (acting through its member/officer

Rueda) knew or should have known that by entering into the relationship they were exposing themselves to the risk that they could be haled into court in Texas.

14.     Additionally, this Court has personal jurisdiction over FIS and Rueda because FIS is the alter ego of Rueda.  Rueda does now or has in the past completely controlled FIS and acted as if FIS was an extension of his own personal interests, as evidenced by the fact that Rueda admits he was responsible for FIS's financial obligations.  Further, on information and belief, FIS operated with grossly inadequate capital, as evidenced by the fact that it "borrowed" funds from Canyon (without Canyon's authorization or approval); it sought business loans; it was unable, at times, to reimburse Disenos for expenses relating to production of furniture that was sold to Bob Mills; and Rueda purportedly transferred his interest in FIS to others without receiving any compensation in return.  Additionally Rueda used FIS's property as his own personal property, as evidenced by the fact that FIS and Rueda share a physical address. Accordingly, the contacts of FIS can be imputed to Rueda and Rueda's contacts can be imputed to FIS.

15.     Additionally, this Court has personal jurisdiction over Disenos because Disenos is the alter ego of FIS and/or Disenos and FIS operate as a single business enterprise that are not operated as separate entities, but rather integrate their resources to achieve a common business purpose.  Indeed, FIS and Disenos did not separate their finances as two businesses normally would, and FIS routinely transferred monies to Disenos so that Disenos could pay its workers, utility bills, water bills, and other overhead costs.  Additionally, Disenos employees performed work, including reaching out to Bob Mills Furniture in Texas, on behalf of FIS, and in fact Disenos employees had access to FIS email accounts   Moreover, as of December 2017, FIS

owned 50% of Disenos, and prior to that date, Rueda was an owner of each company. Accordingly, the contacts of FIS can be imputed to Disenos, and vice-versa.

16.     This Court also has personal jurisdiction over Disenos and Rodriguez because Disenos was the alter ego of Rueda and Rodriguez.  Rueda and Rodriguez completely controlled Disenos from 2012 through 2017 and during that time, Rueda and Rodriguez acted as if Disenos was an extension of their own personal interests, as evidenced by the fact that Rodriguez took out personal loans to support Disenos and the fact that Rueda admits he and Rodriguez were individually responsible for Disenos's financial obligations.  Further, on information and belief, Disenos operated with grossly inadequate capital, as evidenced by the fact that it was at times unable to pay for labor or electricity and thus would have Rodriguez take out personal loans to cover such payments.  Moreover, both Rodriguez and Rueda purportedly transferred their ownership interest in Disenos to others without receiving any compensation in return. Accordingly, the contacts of Rueda and Rodriguez can be imputed to Disenos, and vice-versa.

17.     In short, Defendants have directed their conduct at Texas, using Canyon's Trade Secrets to target customers in Texas.  Defendants actually knew or should have known that their products would be sold in Texas stores to Texas consumers, and it was certainly foreseeable that the products they sold to Bob Mills Furniture would reach the Texas market.  Additionally, FIS and Disenos derived all or a substantial portion of their revenues from sales and delivery of the bunk beds to Bob Mills's distribution center in Texas.  And Defendants aimed their tortious conduct at Texas to disrupt Canyon's ability to sell its bunk beds, to its customer RTG, and consequently to Texas customers. For each of these reasons, Defendants are subject to personal jurisdiction in Texas.

18.     Finally, this Court has personal jurisdiction over each of the Defendants because the Defendants have used the corporate form as a cloak to perpetrate fraud, illegality, and to work an injustice against Canyon, as detailed further throughout this Complaint.

## IV.      VENUE

19.     This action was initially brought in the 73rd Judicial District Court for Bexar County, Texas, where venue was proper pursuant to Section 15.002(a)(1) and 15.005 of the Texas Civil Practice and Remedies Code.   The Defendants then removed this action to this Court, pursuant to 28 U.S.C § 1441(a), which provides for removal to the district court of the United States for the district and division embracing the place where such action is pending. Venue is additionally proper in this Court pursuant to 28 U.S.C. § 1390(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred here – namely, the unauthorized use of trade secrets to profit off of sales of copied Canyon furniture products.

## V.      FACTUAL BACKGROUND

20.     Canyon designs many lines of furniture.   One such furniture line is manufactured and assembled by an affiliate of Canyon at a plant in Tijuana, Baja California, Mexico (the "Canyon Baja Plant").   This furniture line includes certain furniture designed for children known as the "Creekside Line," with offerings such as the Twin/Full Step Bunk Bed with Desk and Chest (the "Creekside Loft"), which comes in colors like "Taffy" and "Charcoal."   *See* Exhibit A to Aff. of M. Goldstein; Exhibit B to Aff. of M. Goldstein.[2]   The designs and plans for such furniture were created and owned by Canyon and are the result of years of thought, creativity and monetary investment by Canyon and its affiliates.

---

[2] The evidentiary citations found herein refer to affidavits and attached exhibits that were filed as part of *Plaintiff's First Amended Petition, Request for Temporary Restraining Order, Temporary Injunction, Permanent Injunction, and Damages, and Request for Disclosure*, which was filed in the state court prior to removal of the case to this Court and is part of the record of this Court (*see* Exhibit G to the Appendix for Defendants' Notice of Removal [Dkt. #1-3]).   The referenced affidavits and exhibits are incorporated herein as if set forth in their entirety.

21.     As affiliate companies, the Canyon Baja Plant works jointly with Canyon in confidence to design and engineer furniture, including working together to prepare diagrams and drawings, design manufacturing processes, arrange vendors and suppliers, prepare financial plans, and purchase component parts from vendors and assembles furniture based on Canyon's designs and plans.   One of the materials sourced from vendors is a printed drawer bottom product that is used to line the drawers of certain pieces of furniture, including the Creekside Loft.   This drawer liner – which is made to look like an old print of the "Lebanon Express" newspaper – is made specifically for Canyon' Creekside Line by one of the vendors, and is not available for general purchase from other sources.   Other specific component parts of the Creekside Line include multiple process wood-tone finishing systems that have been carefully formulated to create the "Taffy" and "Charcoal" finish and both functional and decorative hardware used in assembly.   The designs, drawings, plans, merchandising information sheets, pricing methodologies, vendor lists, and other confidential, proprietary information related to the design, manufacture, engineering, finishing, and financial and sales data are part of Canyon's valuable and confidential trade secrets (the "Trade Secrets").   Canyon carefully protects access to Canyon's Trade Secrets.

22.     Defendant Julio Alfonso Rodriguez Valdez ("Rodriguez") served as Canyon's Chief Financial Officer from approximately 2002.   Defendant Rodriguez was responsible at Canyon for human resources, security, and all accounting and activities related to its financial operations, including all information related to costs, sales, revenues, pricing, vendor and customer lists and other highly sensitive, proprietary information/data constituting a part of Canyon's Trade Secrets (such information, collectively with Canyon's Trade Secrets, is referred

to herein as the "Confidential Information").  Defendant Rodriguez at all relevant times herein had access to the Confidential Information and knew of Canyon's Trade Secrets.

23.     Defendant Daniel Rueda Sanchez ("Rueda") worked at the Canyon Baja Plant for many years, from approximately 1998 through May of 2018, and served in many senior roles beginning as a product engineer and spending the last five years as the manager of the Canyon Baja Plant.  As such, Rueda was responsible, among other things, for operations of the plant, including but not limited to purchasing, engineering and manufacturing, finishing, packing and shipping and had access to all of Canyon's Trade Secrets at the Canyon Baja Plant, in addition to some or all of Plaintiff's Confidential Information.

24.     Some or all of the Confidential Information, including all of Canyon's Trade Secrets (and other information described above) is a trade secret because it includes a formula, pattern, compilation, program, device, method, technique, process, financial data, and/or list of business methods, know-how, manufacturing processes and procedures, marketing information, pricing data, product designs and manufacturing, supplier and vendor lists, technical information, technical drawings, furniture designs, competitive-pricing deals with vendors, customer lists, market-performance data, profitability analysis, and/or manufacturing methods, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

25.     Plaintiff has made reasonable efforts to keep this proprietary information secret, by (1) limiting access to information outside of senior leadership, (2) using tight system controls on access to financial information, drawings, CAD files, internal assembly information and

photography, and (3) buying from a very small vendor base and cultivating long-standing relationships with vendors who know the value of protecting trade secrets and who would not knowingly share with a competitor or sell competing product to a competitor.  Third parties and the public do not know this information and cannot readily obtain this information except through improper means.

26.     Unbeknownst to Canyon, Defendants Rueda and Rodriguez, while acting in their respective capacities as plant manager and Chief Financial Officer of Canyon, misappropriated and purloined the Confidential Information, including Canyon's Trade Secrets, for their own benefit to unfairly compete with Canyon and otherwise undermine Canyon's operations to Canyon's detriment.  Defendants Rueda and Rodriguez secretly set up, incorporated – and owned, in whole or in part – Defendants FIS and Disenos (collectively, FIS and Disenos are the "Corporate Defendants") for the purpose of wrongfully and unlawfully utilizing the Confidential Information, including especially Canyon's Trade Secrets, to copy and manufacture Canyon's furniture and designs for sale to competitors of Canyon's exclusive retail partner in Texas, and possibly elsewhere.  Such Defendants stole and converted to their own use and benefit Canyon's invaluable furniture designs and other of Canyon's Trade Secrets.  Moreover, on the basis of information outlined in the following paragraphs, Canyon believes that Defendants Rueda and Rodriquez caused and/or participated in the diversion of furniture component parts ordered (and possibly paid for) by the Canyon Baja Plant – intended to be used for the manufacture of Canyon-designed furniture – to Defendants FIS and Disenos who in turn used such parts to manufacture furniture that copied the Canyon designs (the "Copied Furniture").

27.     In June 2018, Canyon became aware that Bob Mills Furniture – a direct competitor of Canyon's exclusive Texas retailer, RTG – was selling a loft bed substantially

similar to Canyon's Creekside Loft.  *Compare* Exhibit A to Aff. of M. Goldstein *with* Exhibit C to Aff. of M. Goldstein.

28.     On or around June 16, 2018, Jason Laws ("Laws"), the Store Manager of the Rooms To Go Kids store in Round Rock, Texas, traveled to a Bob Mills Furniture store in Waco, Texas, where he confirmed that Bob Mills Furniture was offering for sale to consumers a Journey Loft Twin Over Full Bed (the "Journey Loft"), which comes in colors "Ash" and a lighter color (that had since been discontinued).  *See* Exhibit C to Aff. of J. Laws; Exhibit D to Aff. of J. Laws.

29.     Bob Mills Furniture apparently offered the Journey Loft for sale through its stores (including its San Antonio, Texas store) and online (for delivery in Texas). Exhibit C to Aff. of M. Goldstein.

30.     The Journey Loft was virtually identical to Canyon's Creekside Loft.  Not only was the "Ash" color offered by Bob Mills nearly the same as the "Charcoal" color offered by Canyon, but when Laws opened the drawers of the Journey Loft, he found the very same drawer liner used in the Creekside Loft—i.e., the "Lebanon Express" newsprint made exclusively for Canyon by its vendors.  *See* Exhibit E to Aff. of J. Laws.

31.     Upon further inspection of the Journey Loft, Laws also discovered assembly instructions for the Journey Loft that look remarkably similar to assembly instructions for Canyon's Creekside Loft – even down to the placement of pictures on the page.  *Compare* Exhibit F to Aff. of J. Laws *with* Exhibit D to Aff. of M. Goldstein.  It appears that Defendants made minimal deletions or changes to the Canyon assembly instructions, but otherwise left them virtually intact, and thereafter attempted to pass them off as their own.

32.     Additionally, while at the Bob Mills store, Laws found manufacturer tags on the Journey Loft that showed the manufacturer was Defendant FIS.  *See* Exhibit G to Aff. of J. Laws; Exhibit H to Aff. of J. Laws.  These manufacturer tags showed the Journey Loft was made in Mexico on June 26, 2016.

33.     Notably, prior to February 2016, Bob Mills Furniture stores routinely purchased furniture items in the Creekside Line from Canyon, and then sold them in their retail stores in Texas to their retail customers in Texas.  However, in or around February 2016, Canyon stopped selling its Creekside Line to Bob Mills Furniture, because Canyon's exclusive retailer RTG and Bob Mills had become direct competitors at their physical store locations in the San Antonio area.

34.     Subsequently, on July 9, 2018, Sotero Pastrano, Jr., the District Office Manager of the Rooms To Go South Texas stores and former Rooms To Go Kids store manager in Midland, Texas, traveled to a Bob Mills store located in San Antonio, Bexar County, Texas, where he discovered that the Bob Mills San Antonio store was also offering the Journey Loft for sale.  *See* Exhibit C to Aff. of S. Pastrano; Exhibit D to Aff. of S. Pastrano.  As with the Journey Loft offered for sale in the Bob Mills Waco location, this Journey Loft contained the exclusive "Lebanon Express" newsprint that is used in the Creekside Loft.  *See* Exhibit E to Aff. of S. Pastrano; Exhibit F to Aff. of S. Pastrano.  Again, as with the Waco loft, the San Antonio loft had manufacturer tags that showed the manufacturer was Defendant FIS.  *See* Exhibit G to Aff. of S. Pastrano.  Unlike the tags on the Waco loft, however, the San Antonio loft manufacturer tags showed production in Mexico much more recently – on May 22, 2018.

35.     Apparently – in breach of the duties they owed to Canyon – the Individual Defendants viewed Canyon's 2016 decision to stop selling the Creekside Line to Bob Mills

Furniture as a business opportunity to exploit for their own gain.  At least as early as June 26, 2016, the Individual Defendants (1) caused Disenos to manufacture Copied Furniture and/or distribute furniture stolen from the Canyon Baja Factory, and (2) caused FIS to sell the copied or stolen furniture to Bob Mills Furniture for sale in Texas – presumably, to fill the void left by the lack of the Creekside Line in Bob Mills Furnitures's Texas stores.  As of the date Plaintiff filed the original lawsuit, one or more of the Defendants continued with this illicit manufacturing and/or distribution and sales plan, peddling furniture apparently manufactured less than two months prior to the filing; if the temporary restraining order expires or injunction is denied, Defendants are likely to continue these activities.  In other words, Defendants have been using (and may continue to use) Confidential Information, including Canyon's Trade Secrets, to compete with Canyon for approximately two years, while both Rueda and Rodriguez served Canyon or its affiliates.

36.    Defendants' brazen attempts to pass off Canyon-designed furniture as its own is causing irreparable injury to Canyon, because competitors are offering identical products based on stolen Trade Secrets, Confidential Information, and parts.  Not only that, but Canyon loses the benefit of collateral sales, via its retailer partner, to consumers who might have bought not just the copied products, but other Canyon-designed furniture as well.  Moreover, disclosure of Canyon's Trade Secrets could result in loss of trade secret protection.  And Canyon's trade secrets are being shared with Defendants' employees, who are using them to make copied furniture. Even if Canyon can ultimately quantify the volume of stolen merchandise, Canyon cannot quantify the harm caused to it by loss of protection of its Trade Secrets.

37.    When confronted on July 9, 2018, Defendant Rodriquez (Canyon's Chief Financial Officer) admitted to owning 50% of Defendant Disenos through December 2017.

38.     Defendants did more than misappropriate Canyon's Trade Secrets and Confidential Information.  On July 11 and 12, 2018, Canyon Vice President Micah Goldstein ("Goldstein"), along with other Canyon affiliate personnel, reviewed Canyon's accounting records and bank statements, and discovered that in 2015 – 2017, Canyon had transferred funds to FIS in payment for purchases of equipment or subcontract work.  At the time of these transfers, Canyon was unaware that Rueda owned FIS (in whole or in part).  While serving as Canyon's Chief Financial Officer and plant manager, respectively, Rodriguez and Rueda never disclosed Rueda's ownership interest in FIS to Canyon.  By virtue of their positions, Rueda and Rodriguez knew or should have known that Canyon was ignorant of Rueda's ownership interest in FIS.  Such information was – and is – material to Canyon.  Had Canyon known about Rueda's ownership in FIS, it would not have purchased equipment and/or subcontracted with FIS without requiring additional information from FIS to ensure the transactions were made at arms-length.

39.     In his review, Goldstein also discovered that over several months in 2017, six unauthorized wire transfers (the "Unauthorized Transfers") were made from Canyon's bank account to a U.S. bank account of FIS.   The dates and amounts of the Unauthorized Transfers are as follows:

| Date | Transfer To | Amount |
|---|---|---|
| 4/4/2017 | FIS's Wells Fargo Account | $   45,575.07 |
| 9/13/2017 | FIS's Wells Fargo Account | $   22,000.00 |
| 10/3/2017 | FIS's Wells Fargo Account | $   55,000.00 |
| 11/6/2017 | FIS's Wells Fargo Account | $   60,000.00 |
| 12/1/2017 | FIS's Wells Fargo Account | $   45,000.00 |
| 12/19/2017 | FIS's Wells Fargo Account | $   35,000.00 |
| | **TOTAL** | **$ 262,575.07** |

40.     There were controls in place that limited access to the ability to make transfers from Canyon's bank accounts.  On the dates the Unauthorized Transfers were made, only Rodriguez had access to be able to make the transfers.

41.     After each Unauthorized Transfer occurred, FIS would later pay back the money, initiating a wire transfer to Canyon's bank account for the same amount of the transfer.   In essence, Canyon was unknowingly fronting "loans" to FIS, its competitor.   In one case, the "repayment" was made more than six months later – on June 29, 2018 – shortly *after* Canyon discovered FIS's copied furniture items for sale in Texas stores.   On information and belief,[3] some or all of these "repayments" were made at least in part with funds received from payments relating to sales of the Copied Furniture to Bob Mills Furniture stores in Texas.   FIS did not pay interest to Canyon with any of these "repayments," which were made as follows:

| Date | Transfer From | Amount |
|---|---|---|
| 4/17/2017 | FIS's Wells Fargo Account | $   45,575.00 |
| 9/29/2017 | FIS's Wells Fargo Account | $   22,000.00 |
| 11/1/2017 | FIS's Wells Fargo Account | $   55,000.00 |
| 11/30/2017 | FIS's Wells Fargo Account | $   60,000.00 |
| 1/9/2018 | FIS's Wells Fargo Account | $   45,000.00 |
| 6/29/2018 | FIS's Wells Fargo Account | $   35,000.00 |
| | **TOTAL** | **$ 262,575.00** |

42.     For Unauthorized Transfers that were "repaid" in the same calendar month, neither transaction was recorded in Canyon's accounting records.   However, for Unauthorized Transfers that were "repaid" in different calendar months, false accounting entries were made in Canyon's general ledger.   Instead of recording these transactions to reflect what they really were – unauthorized, interest-free loans – the transactions were recorded in a manner that served to overstate inventory and understate payables and receivables.   For example, when the Unauthorized Transfer was made to FIS, an entry was recorded to debit (increase) an inventory account and credit (decrease) the cash account; when the "repayment" was made from FIS, an entry was recorded to debit (increase) the cash account and credit (decrease) the inventory

---

[3] Despite the Court's Order dated August 15, 2018 [Dkt. # 18], entitling the Plaintiff to take jurisdictional discovery from Defendants, counsel for Defendants repeatedly instructed the Defendants not to answer questions regarding the source of the FIS "repayments" to Canyon, including whether the funds came from payments FIS received in connection with sales of furniture to Bob Mills Furniture stores in Texas.

account.  *See, e.g.,* Exhibit E to Aff. of M. Goldstein (bank statements showing $55,000 transfer to FIS and "repayment" from FIS); Ex. F to Aff. of M. Goldstein (journal entries for $55,000 transfer).    Additionally, each of these journal entries lacks support – in the form of an invoice, purchase order, or the like – that would indicate inventory was actually purchased as a result of the transfer to FIS.

43.    Canyon relied on these falsified entries when operating the Canyon Baja Plant, and has been damaged as the result of its reliance on this false information.

44.    Misappropriating Canyon's Trade Secrets and Confidential Information and making the Unauthorized Transfers constitute only one part of the Defendants' scheme to perpetrate a fraud against Canyon.  This fraud deceived Canyon as to the true identity of FIS and Disenos, allowed all Defendants to misappropriate, use, and ultimately profit from Plaintiff's trade secrets in Texas, and permitted FIS and Disenos to compete directly with Canyon.

45.    Among other things, as part of their efforts to perpetrate the fraud, Defendants: directed workers at the Canyon Baja Plant to divert component parts, paint, hardware, wood, rails, machinery, and solvents from the Canyon Baja Plant to Disenos; caused Canyon to pay shipping charges for Disenos to ship Disenos's copied furniture; and directed workers at the Canyon Baja Plant to remove finished pieces of furniture, machinery, equipment, and forklifts from the Canyon Baja Plant and send them to Disenos.  Each of these overt acts taken by the Individual Defendants and the Corporate Defendants (who were operating through the Individual Defendants, their members/officers) furthered the fraud against Canyon.

## VI.     CAUSES OF ACTION

### COUNT ONE
### Unfair Competition – Statutory Misappropriation of Trade Secrets
### Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code §§ 134A.001, *et seq.*
### (Against All Defendants)

46.     Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

47.     Canyon owns valuable Confidential Information and Canyon's Trade Secrets, each of which is proprietary.

48.     In connection with Individual Defendants' roles with the business, Canyon gave, provided access to, and entrusted Individual Defendants with Canyon's Trade Secrets and Confidential Information. Canyon went to, and continues to go to, great expense in both time and money to develop and protect the secrecy of its trade secrets and confidential proprietary information. Canyon's Trade Secrets and Confidential Information are essential to Canyon's success and enable Canyon to compete in a specialized market.

49.     Some or all of the Confidential Information, including Canyon's Trade Secrets (and other information described above) is a trade secret because it includes a formula, pattern, compilation, program, device, method, technique, process, financial data, and/or list of business methods, know-how, manufacturing processes and procedures, marketing information, pricing data, product designs and manufacturing, supplier and vendor lists, technical information, technical drawings, furniture designs, competitive-pricing deals with vendors, customer lists, market-performance data, profitability analysis, and/or manufacturing methods, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value

from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  Tex. Civ. Prac. & Rem. Code § 134A.002(6).

50.     Plaintiff has made reasonable efforts to keep this proprietary information secret, by (1) limiting access to information outside of senior leadership, (2) using tight system controls on access to drawings, CAD files, assembly instructions and photography, and (3) buying from a very small vendor base and cultivating long-standing vendor relationships with vendors who know the value of protecting trade secrets and who would not knowingly share with a competitor or sell competing product to a competitor.  Third parties and the public do not know this information and cannot readily obtain this information except through improper means.

51.     One or more Defendants used improper means (either by theft, breach of a duty to maintain confidentiality, to limit use, or to prohibit discovery of a trade secret, and/or espionage through electronic or other means) to obtain Canyon's Trade Secrets. Each Defendant misappropriated Canyon's Trade Secrets through:

    a.     Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; and/or

    b.     Disclosure or use of a trade secret of another without express or implied consent by a person who:

       i.     used improper means to acquire knowledge of the trade secret;

       ii.     at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

          a)     derived from or through a person who had utilized improper means to acquire it;

          b)     acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

          c)     derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

     iii.  before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

52.  Individual Defendants divulged and continue to divulge Canyon's Confidential Information, including Canyon's Trade Secrets, such as assembly instructions, vendor contact information, furniture designs, manufacturing processes, engineering information, lists of supplies and suppliers, pricing, financial information, merchandise information sheets, furniture assembly instruction manuals, customer lists, and component furniture parts.   Individual Defendants are using the Confidential Information, including Canyon's Trade Secrets, for their benefit and/or the benefit of FIS and Disenos, and to the detriment of Canyon.

53.  Specifically, Individual Defendants exploited their access to the Confidential Information, including Canyon's Trade Secrets, by secreting it away for their own commercial benefit and purposes. Through their companies, FIS and Disenos, the Individual Defendants manufactured and/or distributed furniture identical in design to Plaintiff's furniture, and utilized the same manufacturing methods to sell the Copied Furniture to Plaintiff's direct competitors.

Individual Defendants also have a duty not to reveal or use the Confidential Information, including Canyon's Trade Secrets, and FIS and Disenos have a duty to refrain from utilizing or even possessing such information.  Additionally, FIS and Disenos, at the time of disclosure or use, knew or had reason to know that the Individual Defendants' knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; and derived from or through persons (Rueda and Rodriguez) who owed a duty to the person seeking relief to maintain its secrecy or limit its use.  Each of the Defendants' acts, singularly or in combination with others, constitute a breach of their covenant not to use or disclose trade secrets or confidential information.

54.     Each Defendant's misappropriation was willful and malicious.

55.     Each Defendant's misappropriation proximately caused significant damages to Canyon.  Canyon was and is being damaged by loss of direct sales, loss of collateral sales from consumers, and the possibility of losing its trade secret protection as a result of Defendants' wrongful conduct. Canyon seeks damages that include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.   Canyon also seeks injunctive relief for actual and/or threatened misappropriation; exemplary damages; and attorney's fees under Tex. Civ. Prac. & Rem. Code § 134A.003-005.

## COUNT TWO
### Unfair Competition – Common Law Misappropriation
### (Against All Defendants)

56.     Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

57.     In addition to misappropriating Canyon's Trade Secrets in violation of the Texas Uniform Trade Secrets Act, Defendants have engaged in common law misappropriation of Canyon's Confidential Information, including Canyon's Trade Secrets.   Canyon invested extensive time, labor, skill, and money in the creation of its furniture designs, merchandise information sheets, , component furniture parts and other Confidential Information.

58.     Defendants have used Canyon's furniture designs, assembly instructions, component furniture parts, and/or other Confidential Information to manufacture and/or distribute the Copied Furniture.  Defendants have thereafter sold the Copied Furniture to retailers such as Bob Mills Furniture in Texas (and possibly elsewhere) in competition with the Plaintiff,

thereby gaining a special advantage in that competition (*i.e.,* a "free ride") because Defendants are burdened with little or none of the expense incurred by the Plaintiff.

59.     Defendants actions in manufacturing the Copied Furniture and offering it for sale in competition with Plaintiff has caused commercial damage to the Plaintiff, including but not limited to, loss of sales that Plaintiff could have made of the Copied Furniture, loss of good will, and loss of collateral sales from consumers who bought the Copied Furniture at Bob Mills Furniture instead of through Canyon's exclusive retailers.

60.     Defendants' unlawful conduct described above will continue unless restrained immediately by order of the Court.  By the unlawful conduct of Defendants, Canyon will suffer immediate and irreparable harm that cannot be compensated by an award of damages

61.     Consequently, Canyon also requests compensatory damages in an amount to be proven at trial and exemplary damages to deter such conduct in the future.

### COUNT THREE
### Breach of Fiduciary Duty
### (Against Individual Defendants)

62.     Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

63.     By virtue of Rodriguez's role as Chief Financial Officer, Rodriguez enjoys a fiduciary relationship with Plaintiff.  By virtue of the appointment of Rueda as the Canyon Baja Plant Manager, Rueda enjoyed a relationship of special trust and confidence with Plaintiff. Pursuant to those relationships, each Individual Defendant owes or owed to Canyon the fiduciary duties of care, loyalty, good faith, and full disclosure, the duty to refrain from self-dealing, and the duty to put Canyon's interests ahead of its own interests and the interests of others.

64.     The Individual Defendants breached their fiduciary duties owed to Plaintiff by abusing their positions of trust and access to Plaintiff's Confidential Information, including Canyon's Trade Secrets, for their own personal gain to Plaintiff's detriment. Specifically, the Individual Defendants used the information Plaintiff entrusted to them to identify which pieces of furniture were profitable, how to make and manufacture the furniture profitably, where to buy vendor parts, and the competitive pricing for those parts.  The Individual Defendants further used their access to the Confidential Information (including Canyon's Trade Secrets) to steal that information and use it to cause their businesses, FIS and Disenos, to manufacture, sell, and profit from the Copied Furniture.  Moreover, Rodriguez used his position serving as Chief Financial Officer to cause Canyon to make unauthorized, interest-free "loans" to FIS, its competitor.  In doing so, the Individual Defendants engaged in self-dealing, failed to put Canyon's interests ahead of their own interests, violated the duties of good faith and loyalty.

65.     As a direct and proximate result of the Individual Defendants' conduct as alleged above, Canyon was injured and has suffered substantial damages, including loss of good will, loss of sales, reputational harm, brand dilution, and loss of collateral sales.

66.     Canyon is entitled to recover all damages suffered as a result of the Individual Defendants' breaches of fiduciary duties.

**COUNT FOUR**
**Breach of Confidential Relationship**
**(Against Individual Defendants)**

67.     Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

68.     Defendant Rodriguez served as Chief Financial Officer and enjoyed a confidential relationship with Plaintiff.  By virtue of the appointment of Rueda as the Canyon Baja Plant

Manager, Rueda enjoyed a relationship of special trust and confidence with Plaintiff.

69.     The Individual Defendants breached that confidential relationship by using and disclosing Plaintiff's Confidential Information, including Canyon's Trade Secrets, which they gained knowledge of through their respective roles and confidential relationship with Plaintiff.

70.     The Individual Defendants knew that the Confidential Information, including Canyon's Trade Secrets, was presented to them in confidence as Plaintiff's CFO and plant manager.

## COUNT FIVE
### Breach of Duty of Loyalty
### (Against Individual Defendants)

71.     Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

72.     By virtue of Rodriguez's role as Chief Financial Officer and Rueda's appointment as the Canyon Baja Factory's plant manager, Individual Defendants had a confidential relationship with Canyon and owed a duty of loyalty to Canyon, which includes the obligation to act in Canyon's interest and the obligation not to take, divulge, or use Canyon's Confidential Information, including Canyon's Trade Secrets, to Canyon's detriment during or after their service to the company.

73.     Therefore, as persons with access to Canyon's Confidential Information, Individual Defendants had common law duty of loyalty not to remove, convert or misappropriate Canyon's Confidential Information, including Canyon's Trade Secrets.

74.     Individual Defendants divulged Canyon's Confidential Information to others, including to FIS and Disenos, to the detriment of Canyon.  Specifically, Individual Defendants used Canyon's Confidential Information, particularly information about Canyon furniture

manufacturing and assembly processes, to cause Disenos to manufacture and assemble furniture designed by Canyon and sell it through FIS to Bob Mills Furniture stores and possibly others. Accordingly, Individual Defendants used Canyon's Confidential Information for their benefit and/or the benefit of FIS and Disenos and to the detriment of Canyon. Canyon has not authorized the removal, use, and/or disclosure of the Confidential Information taken by Individual Defendants.

75.     Individual Defendants' acts constitute a breach of their common law duty of loyalty owed to Canyon. The above-referenced acts in misappropriating Confidential Information developed by Canyon and other conduct committed by Individual Defendants are the proximate cause of significant damages to Canyon.

76.     Canyon has been and will continue to be damaged by the lost revenue and lost business goodwill as a result of Individual Defendants' wrongful conduct.

77.     Individual Defendants' unlawful conduct described above will continue unless restrained immediately by order of the Court. By the unlawful conduct of Defendants, Canyon will suffer immediate and irreparable harm that cannot be compensated by an award of damages.

78.     Canyon has also been damaged by the disclosure, use and/or removal of its Confidential Information and trade secrets and Defendants' use and disclosure of the same. Canyon will continue to be damaged if Defendants continue to disclose or use Canyon's Confidential Information.

79.     Individual Defendants' conduct described above was done willfully, intentionally, and with malice. Consequently, Canyon also requests actual damages in an amount to be proven at trial and exemplary damages to deter such conduct in the future.

## COUNT SIX
### Fraud by Nondisclosure
### (Against Individual Defendants)

80.    Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

81.    During the time that Canyon purchased equipment from and subcontracted work from FIS, Individual Defendants concealed or failed to disclose the fact that Rueda owned any interest in FIS.  Additionally, Individual Defendants actively concealed and failed to disclose that Rodriguez had caused Canyon to make unauthorized, interest-free "loans" to FIS – its competitor.

82.    By virtue of Rodriguez's role as Chief Financial Officer, Rodriguez enjoys a fiduciary relationship with Plaintiff.  By virtue of the appointment of Rueda as the Canyon Baja Plant Manager, Rueda enjoyed a relationship of special trust and confidence with Plaintiff. Accordingly, each of the Individual Defendants owed Canyon a duty to disclose the facts.

83.    The fact that Rueda owned any interests in FIS was, and is, material to Canyon. Similarly, the fact that substantial sums of money were being transferred to FIS from Canyon's bank account to fund interest-free loans to FIS, its competitor, was, and is, material to Canyon.

84.    By virtue of their positions, Rueda and Rodriguez knew or should have known that Canyon was ignorant of Rueda's ownership interest in FIS.  Moreover, by virtue of their active concealment of the unauthorized "loans" to FIS – namely, by booking false accounting entries – the Individual Defendants knew that Canyon was unaware of the true nature of these transactions.

85.     The Individual Defendants never disclosed Rueda's ownership interest in FIS to Canyon, despite their duty to convey those facts to Canyon.  Likewise, the Individual Defendants never disclosed the unauthorized, interest-free "loans" being made to FIS.

86.     In failing to disclose the fact of Rueda's ownership of FIS to Canyon, the Individual Defendants intended to induce Canyon to purchase equipment from and subcontract with FIS.  Similarly, in failing to disclose the "loans" to Canyon, the Individual Defendants intended Canyon to continue making such "loans" to FIS.

87.     Canyon was injured as the result of entering into transactions with FIS – including purchasing equipment from, subcontracting with, and making interest-free "loans" to FIS. Canyon is entitled to recover all damages suffered as a result of the Individual Defendants' fraud by nondisclosure.

### COUNT SEVEN
### Common Law Fraud
### (Against Rodriguez)

88.     Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

89.     By recording false journal entries in Canyon's general ledger, Rodriguez made multiple false representations to Canyon.   These representations caused inventory to be overstated and payables and receivables to be understated.

90.     Such misrepresentations were material to Canyon.

91.     When Rodriguez made the representations, he knew the representations were false because he knew that instead of transferring funds to FIS to procure inventory, he had instead transferred the funds to FIS as an unauthorized, interest-free "loan."

92.     Rodriguez made the misrepresentations to Canyon with the intent that Canyon act or rely on the representations.  Specifically, Rodriguez intended that Canyon rely on the false journal entries so it would not uncover his scheme to send money to FIS.

93.     Canyon actually relied on the misrepresentations in running its Canyon Baja Plant.

94.     The misrepresentations caused Canyon injury.  Canyon is entitled to recover all damages suffered as a result of Rodriguez's common law fraud.

**COUNT EIGHT**
**Unjust Enrichment**
**(Against FIS)**

95.     Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

96.     FIS obtained the benefit of receiving interest-free "loans" from Canyon and by entering into non-arms' length transactions such as the sale of equipment and machinery with Canyon, without Canyon's knowledge, authorization, or approval.

97.     Rodriguez wrongly secured the unauthorized "loans" by illicitly transferring fund from Canyon's bank account to FIS.  FIS passively received these unauthorized "loans."

98.     Rueda and/or Rodriguez wrongly cause Canyon to enter into non-arms' length transactions with FIS for the sale of equipment and machinery from FIS to Canyon while failing to disclose the true identity of FIS.  FIS passively received the benefit of such transactions, i.e., funds from such sales.

99.     It would be unconscionable to allow FIS to retain the benefits of receiving interest-free "loans" of funds from Canyon's bank account and of entering into non-arms' length

transactions such as the sale of equipment and machinery with Canyon, which were made without Canyon's knowledge, authorization, or approval.

**COUNT NINE**
**Common Law Fraud**
**(Against Rodriguez and Disenos)**

100.    Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

101.    By falsifying parts of invoices from a trucking company relating to shipping charges for Disenos to ship its copied furniture,[4] Rodriguez (acting individually and as a member/officer and/or alter ego of Disenos) made multiple false representations to Canyon. These representations caused Canyon to pay shipping charges for items it had not shipped.

102.    Such misrepresentations were material to Canyon.

103.    When Rodriguez (acting individually and as a member/officer and/or alter ego of Disenos) made the representations, he knew the representations were false because he knew that the invoices were related to shipping charges for Disenos to ship its copied furniture – not for Canyon to ship anything.

104.    Rodriguez (acting individually and as a member/officer and/or alter ego of Disenos) made the misrepresentations to Canyon with the intent that Canyon act or rely on the representations.  Specifically, Rodriguez and Disenos intended that Canyon rely on the falsified invoices so it would not uncover his scheme to cause Canyon to pay for Disenos to ship its copied furniture.

---

[4] The dates of shipment on these invoices are:10/12/2016, 3/2/2017, 3/7/2017, 4/5/2017, 4/12/2017, 5/25/2017, 6/9/2017, 6/9/2017, 6/27/2017, 10/31/2017, 11/24/2017, 12/5/2017, 2/15/2018, 2/28/2018, and 3/9/2018.

105.    Canyon actually relied on the misrepresentations in running its Canyon Baja Plant.

106.    The misrepresentations caused Canyon injury.  Canyon is entitled to recover all damages suffered as a result of Rodriguez's and Disenos's common law fraud.

### COUNT TEN
### Fraud by Nondisclosure
### (Against All Defendants)

107.    Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

108.    During the time in question, all Defendants actively concealed and failed to disclose to Canyon as to the true identity of FIS and Disenos, which concealment allowed all Defendants to misappropriate, use, and ultimately profit from Canyon's trade secrets in Texas and permittted FIS and Disenos to compete directly with Canyon.

109.    By virtue of Rodriguez's role as Chief Financial Officer, Rodriguez enjoys a fiduciary relationship with Plaintiff.  By virtue of the appointment of Rueda as the Canyon Baja Plant Manager, Rueda enjoyed a relationship of special trust and confidence with Plaintiff.  Accordingly, both Rodriguez and Rueda (and their alter egos, Disenos and FIS) owed Canyon a duty to disclose the facts.

110.    The fact of the true identity of FIS and Disenos and FIS's and Disenos's competition with Canyon using Canyon's Trade Secrets, Confidential Information, and materials, finished goods, machinery, and equipment (all paid for by Canyon) was, and is, material to Canyon.

111.    By virtue of their positions, Rueda and Rodriguez (and their alter egos FIS and Disenos) knew or should have known that Canyon was ignorant of the true identity of FIS and

Disenos and FIS's and Disenos's competition with Canyon using Canyon's Trade Secrets, Confidential Information, and materials, finished goods, machinery, and equipment (all paid for by Canyon). Moreover, by virtue of their active concealment of the true identity of FIS and Disenos and their own efforts to steal materials, finished goods, machinery, and equipment and divert them to Disenos, all Defendants knew that Canyon was unaware of the true identity of FIS and Disenos and FIS's and Disenos's competition with Canyon using Canyon's Trade Secrets, Confidential Information, and materials, finished goods, machinery, and equipment (all paid for by Canyon).

112.    The Defendants never disclosed the true identity of FIS and Disenos and FIS's and Disenos's competition with Canyon using Canyon's Trade Secrets, Confidential Information, and materials, finished goods, machinery, and equipment.

113.    In failing to disclose these facts, the Defendants intended to induce Canyon continue operating as it had been, to contract with FIS, and to remain ignorant of FIS's and Disenos's competition with Canyon using Canyon's Trade Secrets, Confidential Information, and materials, finished goods, machinery, and equipment.

114.    Canyon was injured as the result Defendants' nondisclosure of (and active efforts to hide) the true identity of FIS and Disenos and FIS's and Disenos's competition with Canyon using Canyon's Trade Secrets, Confidential Information, and materials, finished goods, machinery, and equipment (all paid for by Canyon). Canyon is entitled to recover all damages suffered as a result of the Defendants' fraud by nondisclosure.

## COUNT ELEVEN
### Conspiracy to Commit Fraud
### (Against All Defendants)

115.    Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

116.    Each of the Defendants was a member of a combination of two or more persons.

117.    The object of the combination was to accomplish an unlawful purpose, specifically, to perpetrate their fraud against Canyon meant to deceive Canyon as to the true identity of FIS and Disenos, allow all Defendants to misappropriate, use, and ultimately profit from Canyon's trade secrets in Texas, and permit FIS and Disenos to compete directly with Canyon.

118.    The Defendants had a meeting of the minds on the object or course of action, i.e., to perpetrate their fraud against Canyon meant to deceive Canyon as to the true identity of FIS and Disenos, allow all Defendants to misappropriate, use, and ultimately profit from Canyon's trade secrets in Texas, and permit FIS and Disenos to compete directly with Canyon.

119.    Defendant Rueda committed unlawful, overt acts to further the object of the conspiracy.  Among other acts described throughout this Complaint, Rueda directed workers at the Canyon Baja Plant to remove materials, finished goods, machinery, and equipment paid for by Canyon from the Canyon Baja Plant, send those parts to Disenos, and caused Canyon to pay shipping charges for Disenos to ship copied furniture.

120.    Defendant Rodriguez committed unlawful, overt acts to further the object of the conspiracy.  Among other acts described throughout this Complaint, Rodriguez unlawfully transferred funds in Canyon's bank accounts to the bank account of FIS, falsified parts of invoices from a trucking company to cover up the fact that Canyon was paying shipping charges

for Disenos to ship its copied furniture, and directed Canyon Baja Plant a security supervisor to have workers take materials from the Canyon Baja Plant to Disenos.

121.    FIS committed unlawful, overt acts to further the object of the conspiracy.  Acting through its member/officer, Rueda, FIS accepted unauthorized transfers initiated by Rodriguez from Canyon's bank accounts, and on later dates repaid the unauthorized transfer amounts in order to obscure the truth.  Additionally, FIS – acting through Rueda and others – actively solicited sales of its products in Texas, while knowing that such products were copies, contained stolen parts, and/or were stolen in their entirety from the Canyon Baja Plant.

122.    Disenos committed unlawful, overt acts to further the object of the conspiracy. Acting through its members/officers, Rueda and Rodriguez, Disenos accepted materials, finished goods, machinery, and equipment that it knew had been paid for by Canyon and illicitly from the Canyon Baja Plant.  Additionally, Disenos shipped its own furniture copies (containing stolen parts, and/or that were stolen in their entirety) using Canyon's shipping partner and then caused Canyon to pay for shipping charges.  Moreover, acting through its member/officer Rueda, Disenos knew or should have known its furniture copies were being actively solicited for sale in Texas, while knowing that such products were copies, contained stolen parts, and/or were stolen in their entirety from the Canyon Baja Plant.

123.    Canyon has suffered numerous damages as a proximate result of the conspiracy and of each Defendant's unlawful, overt act in furtherance of the conspiracy.

## COUNT TWELVE
### Conspiracy to Commit Misappropriation of Trade Secrets
### (Against All Defendants)

124.    Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

125.    Each of the Defendants was a member of a combination of two or more persons.

126.    The object of the combination was to accomplish an unlawful purpose, specifically, to misappropriate, use, and ultimately profit from Canyon's trade secrets in Texas.

127.    The Defendants had a meeting of the minds on the object or course of action, i.e., to misappropriate, use, and ultimately profit from Canyon's trade secrets in Texas.

128.    Defendant Rueda committed unlawful, overt acts to further the object of the conspiracy.  Among other acts described throughout this Complaint, Rueda directed workers at the Canyon Baja Plant to remove materials, finished goods, machinery, and equipment paid for by Canyon from the Canyon Baja Plant and send those parts to Disenos.  Moreover, Rueda breached the fiduciary duties, duty of confidentiality, and duty of loyalty he owed to Canyon by abusing his position of trust and access to Canyon's Trade Secrets, using the information Plaintiff entrusted to him to identify which pieces of furniture were profitable, how to make and manufacture the furniture profitably, where to buy vendor parts, and the competitive pricing for those parts.  Rueda further used his access to the Confidential Information (including Canyon's Trade Secrets) to steal that information and use it to cause his businesses, FIS and Disenos, to manufacture, sell, and profit from the Copied Furniture.

129.    Defendant Rodriguez committed unlawful, overt acts to further the object of the conspiracy.  Among other acts described throughout this Complaint, Rodriguez unlawfully transferred funds in Canyon's bank accounts to the bank account of FIS, falsified parts of

invoices from a trucking company to cover up the fact that Canyon was paying shipping charges for Disenos to ship its copied furniture, and directed Canyon Baja Plant a security supervisor to have workers take materials from the Canyon Baja Plant to Disenos.  Moreover, Rueda breached the fiduciary duties, duty of confidentiality, and duty of loyalty owed to Canyon by abusing his position of trust and access to Plaintiff's Confidential Information, including Canyon's Trade Secrets, using the information Plaintiff entrusted to him to identify which pieces of furniture were profitable, how to make and manufacture the furniture profitably, where to buy vendor parts, and the competitive pricing for those parts.  Rueda further used his access to the Confidential Information (including Canyon's Trade Secrets) to steal that information and use it to cause his business, Disenos, to manufacture, sell, and profit from the Copied Furniture.

130.    FIS committed unlawful, overt acts to further the object of the conspiracy.  Acting through its member/officer, Rueda, FIS accepted unauthorized transfers initiated by Rodriguez from Canyon's bank accounts, and on later dates repaid the unauthorized transfer amounts in order to obscure the truth.  Additionally, FIS – acting through Rueda and others – actively solicited sales of its products in Texas, while knowing that such products were copies, contained stolen parts, and/or were stolen in their entirety from the Canyon Baja Plant.

131.    Disenos committed unlawful, overt acts to further the object of the conspiracy.  Acting through its members/officers, Rueda and Rodriguez, Disenos accepted materials, finished goods, machinery, and equipment that it knew had been paid for by Canyon and illicitly from the Canyon Baja Plant.  Additionally, Disenos shipped its own furniture copies (containing stolen parts, and/or that were stolen in their entirety) using Canyon's shipping partner and then caused Canyon to pay for shipping charges.  Moreover, acting through its member/officer Rueda, Disenos knew or should have known its furniture copies were being actively solicited for sale in

Texas, while knowing that such products were copies, contained stolen parts, and/or were stolen in their entirety from the Canyon Baja Plant.

132.    Canyon has suffered numerous damages as a proximate result of the conspiracy and of each Defendant's unlawful, overt act in furtherance of the conspiracy.

## VII.      <u>INJUNCTIVE RELIEF</u>

### A.      Temporary Restraining Order Against All Defendants

133.    Plaintiff incorporates by reference all of the allegations of the foregoing paragraphs.

134.    Plaintiff Canyon is likely to succeed on the merits of its lawsuit.  There exists evidence that Individual Defendants breached and are breaching their duties of confidence, loyalty, and fiduciary duties owed to Canyon.  Furthermore, Defendants' actual misappropriation supports Canyon's request for injunctive relief.   As more fully set forth in above in this Petition, Defendants' wrongful conduct damaged and is damaging Canyon.

135.    Under the circumstances, there is immediate danger resulting from Defendants' (1) actual misappropriation; and (2) breaches and improper competition with Canyon, all to Canyon's detriment.

136.    Such actions, if not restrained and enjoined, have caused and will continue to cause Canyon irreparable harm, and Canyon will not have an adequate remedy at law because the harm caused by loss of collateral sales and the loss of trade secret protection is not quantifiable.  Mere money damages cannot adequately compensate Canyon for such loss, or, in fact, prevent such devastating and permanent loss.  Consequently, a temporary restraining order is necessary to prevent further loss, and to prevent further immediate and irreparable harm.

137.    The immediate, irreparable harm Canyon faces outweighs any alleged injury that would be sustained by the Defendants as a result of the injunctive relief requested herein. Defendants will simply be returned to the status quo that existed prior to Defendants' unlawful conduct.

138.    Additionally, the requested injunctive relief will not adversely affect public policy or the public interest, as the Texas Legislature has enacted the Texas Uniform Trade Secrets Act to protect the very kind of trade secrets at issue here.

139.    Thus, the only adequate, effective, and complete relief to Canyon is to enjoin and restrain Defendants immediately from engaging in the proscribed activities set forth below. Accordingly, pursuant to Federal Rule of Civil Procedure 65, Canyon requests that the Court enter a temporary restraining order immediately to enjoin and restrain that (1) Defendants; (2) Defendants' agents, servants, employees, and attorneys; (3) all others acting in concert with Defendants; and (4) people or entities that receive actual notice of the Order by personal service or otherwise be restrained and enjoined until expiration of the temporary restraining order as follows:

    a.   For Defendants (or anyone in concert with them), from using, maintaining, revealing, or disclosing Canyon's Confidential Information, including Canyon's Trade Secrets, in their possession;

    b.   For Defendants (or anyone in concert with them), from soliciting, attempting to solicit, or interfering with Canyon's business relationships, or doing business with any of Canyon's customers or vendors;

    c.   For Defendants (or anyone in concert with them), from directly or indirectly transferring, spending, hypothecating, concealing, encumbering, withdrawing, removing, or allowing transfer, removal, or withdrawal of all monies, payments, or things of value received by Defendants that were received or earned as a result of any use or disclosure of Canyon's Confidential Information, including Canyon's Trade Secrets;

    d.   For Defendants (or anyone in concert with them), from destroying or disposing of any evidence or other materials, in any form, relating to this action and the issues raised herein, including (but without limitation) all

devices, electronic media, cloud storage, telephones and all copies of any and all documents, media and/or other materials containing, identifying, describing, reflecting, or referencing Canyon's confidential, proprietary, or trade secret information and any and all documents, date, and information which was obtained by Defendants from or by virtue of their relationship with Canyon, including all current and archived media, emails, chats, texts, documents, electronic logs, metadata, storage directories, telephone logs, telephones, computer, laptops, software or hardware; and

e.   For Defendants (or anyone in concert with them), from selling any furniture made in whole or in part with Canyon's Confidential Information and/or Canyon's Trade Secrets.

140.   Plaintiff is ready, willing, and able to post bond pursuant to Fed. R. Civ. P. 65(c).

## B.   Preliminary and Permanent Injunction

141.   Plaintiff Canyon seeks preliminary and permanent injunctive relief pursuant to Fed. R. Civ. P. 65.

142.   As a direct and proximate result of Defendants' conduct described above, Canyon has lost significant, uncertain, and possibly indeterminable amounts of money. Further, Defendants actions are also damaging Canyon in ways that money simply cannot replace. On this date and considering the ongoing nature of Defendants' activities, the total loss to Canyon cannot be accurately measured.  However, unless Defendants are enjoined as requested herein, Canyon will suffer further irreparable harm.

143.   The conduct by Defendants, as set forth in detail above, will further lead to irreparable injury to Canyon, in part because of the strong likelihood that neither FIS, Disenos, nor Individual Defendants have sufficient assets to satisfy a monetary judgment that may be rendered against them, such that Canyon has no adequate remedy at law.

144.   Defendants' conduct is without right or entitlement.

145.   For the harm and loss suffered by Canyon, and for the harm and loss that will continue but for the intervention of the Court, Canyon has no adequate remedy at law.   If

Defendants or anyone acting on their behalf or at their direction are permitted to continue to manufacture, sell, and profit from the Copied Furniture, Defendants will have profited by their own wrong, resulting in immeasurable damages to Canyon that are unpredictable, uncertain and unending.  Unless restrained as requested herein, there exists substantial risk that Defendants will be unable to answer in money damages.

146.    Prospective harm caused by issuing the injunctive relief prayed for herein does not outweigh the substantial loss to be caused by the disclosure and/or unauthorized use of Canyon's Confidential Information, including Canyon's Trade Secrets. Further, the injunctive relief prayed for herein will do no more than restore the parties to their status that existed prior to Defendants' unlawful conduct.

147.    Additionally, the requested injunctive relief will not adversely affect public policy or the public interest, as the Texas Legislature has enacted the Texas Uniform Trade Secrets Act to protect the very kind of trade secrets at issue here.

148.    Canyon is entitled to obtain injunctive relief to prevent Defendant Rodriguez from further breaching his duty of loyalty to Canyon and to prevent the further misappropriation of Canyon's Confidential Information, including Canyon's Trade Secrets.

149.    For the reasons stated in this pleading, it is essential that this Court, upon expiration of temporary restraining order and hearing, preliminarily  restrain Defendants and anyone acting on their behalf and/or at their direction as follows:

   a.  For Defendants (or anyone in concert with them), from using, maintaining, revealing, or disclosing Canyon's Confidential Information, including Canyon's Trade Secrets, in their possession;

   b.  For Defendants (or anyone in concert with them), from soliciting, attempting to solicit, or interfering with Canyon's business relationships, or doing business with any of Canyon's customers or vendors;

   c.  For Defendants (or anyone in concert with them), from directly or indirectly transferring, spending, hypothecating, concealing, encumbering,

withdrawing, removing, or allowing transfer, removal, or withdrawal of all monies, payments, or things of value received by Defendants that were received or earned as a result of any use or disclosure of Canyon's Confidential Information, including Canyon's Trade Secrets;

d. For Defendants (or anyone in concert with them), from destroying or disposing of any evidence or other materials, in any form, relating to this action and the issues raised herein, including (but without limitation) all devices, electronic media, cloud storage, telephones and all copies of any and all documents, media and/or other materials containing, identifying, describing, reflecting, or referencing Canyon's confidential, proprietary, or trade secret information and any and all documents, date, and information which was obtained by Defendants from or by virtue of their relationship with Canyon, including all current and archived media, emails, chats, texts, documents, electronic logs, metadata, storage directories, telephone logs, telephones, computer, laptops, software or hardware; and

e. For Defendants (or anyone in concert with them), from selling any furniture made in whole or in part with Canyon's Confidential Information and/or Canyon's Trade Secrets.

150.    It is essential that the Court act immediately because to do otherwise would risk irreparable injury to Canyon with no adequate remedy at law. Further, Defendants' on-going conduct threatens Canyon, and, therefore, relief cannot wait until a full injunction hearing can be had.

151.    For the reasons stated herein, Canyon further requests that upon proper notice and hearing, a preliminary injunction be entered against Defendants on the terms set forth above to enjoin Defendants—and their agents, servants, employees, attorneys, and those persons and entities in active concert or participation with Defendants who receive actual notice of the order by personal service or otherwise—from undertaking the conduct described herein.

152.    Canyon will seek a permanent injunction on final trial of this lawsuit to enjoin Defendants from the conduct (with additional reasonable limitations) set forth above.

153.    Plaintiff is ready, willing, and able to post bond pursuant to Fed. R. Civ. P. 65(c).

## VIII.        DAMAGES

154.    As stated above, Defendants' actions caused, and if not enjoined will continue to cause, irreparable harm to Canyon, for which there is no adequate remedy at law. Further, Defendants caused additional harm that may be compensable through a judgment for actual damages. Each of the acts and omissions alleged herein singularly or in combination with others, constitutes breach of the common law duty not to use or disclose confidential information; breach of contract; breach of the duty of loyalty; tortious interference with existing or prospective contracts/business relations; misappropriation of confidential information and/or trade secrets; unfair competition; unjust enrichment; common law fraud; fraud by nondisclosure; and other wrongful conduct which proximately caused the occurrences made the basis of this action, and Canyon's damages. Accordingly, as a proximate result of Defendants' conduct set forth herein, Canyon suffered damages far in excess of the minimum jurisdiction limits of this Court, and is entitled to recover same, in addition to interest, costs, reasonable attorney's fees, and in addition to any other available relief.

155.    Further, Canyon seeks judgment from and against Defendants jointly and severally, in the amount of its actual damages, punitive, and exemplary damages, pre-and post-judgment interest, attorney's fees and expenses, cost of court, and any other damages recoverable under applicable law.

## IX.        ATTORNEY'S FEES, COSTS, AND INTEREST

156.    Pursuant to Tex. Civ. Prac. & Rem. Code § 134A.005, Canyon is entitled to recover attorney's fees in this case from Defendants.

157.   In addition to reimbursement of its legal expenses and attorney's fees, Canyon seeks and is entitled to costs of Court, and pre-judgment and post-judgment interest at the maximum rate permitted by law.

## X.     CONDITIONS PRECEDENT

158.   To the extent applicable, all conditions precedents have been performed, have occurred, or have been waived, in accordance with the Federal Rule of Civil Procedure 9(c).

## XI.     DEMAND FOR JURY TRIAL

159.   Plaintiff requests a jury trial.

## XII.     PRAYER

WHEREFORE, PREMISES CONSIDERED, Canyon respectfully requests:

A.   Monetary relief in excess of $1,000,000;

B.   Actual and consequential damages incurred by Canyon, as determined at a trial on the merits;

C.   Judgment against Defendants for exemplary damages as determined at trial on the merits;

D.   Costs of suit, including court costs and reasonable legal expenses and attorney's fees;

E.   Pre- and post-judgment interest at the maximum rate provided by law;

F.   Permanent injunctive relief ordered on final trial of this cause enjoining Defendants from the following conduct:

1. For Defendants (or anyone in concert with them), from using, maintaining, revealing, or disclosing Canyon's Confidential Information, including Canyon's Trade Secrets, in their possession;

2. For Defendants (or anyone in concert with them), from soliciting, attempting to solicit, or interfering with Canyon's business

relationships, or doing business with any of Canyon's customers or vendors;

3. For Defendants (or anyone in concert with them), from directly or indirectly transferring, spending, hypothecating, concealing, encumbering, withdrawing, removing, or allowing transfer, removal, or withdrawal of all monies, payments, or things of value received by Defendants that were received or earned as a result of any use or disclosure of Canyon's Confidential Information, including Canyon's Trade Secrets;

4. For Defendants (or anyone in concert with them), from destroying or disposing of any evidence or other materials, in any form, relating to this action and the issues raised herein, including (but without limitation) all devices, electronic media, cloud storage, telephones and all copies of any and all documents, media and/or other materials containing, identifying, describing, reflecting, or referencing Canyon's confidential, proprietary, or trade secret information and any and all documents, date, and information which was obtained by Defendants from or by virtue of their relationship with Canyon, including all current and archived media, emails, chats, texts, documents, electronic logs, metadata, storage directories, telephone logs, telephones, computer, laptops, software or hardware;

5. For Defendants (or anyone in concert with them), from selling any furniture made in whole or in part with Canyon's Confidential Information and/or Canyon's Trade Secrets;

G.   Judgment against all Defendants, jointly and severally, as requested above; and

H.   Such other and further relief, at law or in equity, to which it may show itself justly entitled.

Dated:  September 28, 2018

DIAMOND MCCARTHY LLP


___/s/ Rebecca A. Muff_____

Allan B. Diamond
TX State Bar No. 05801800
Rebecca A. Muff
TX State Bar No. 24083533
Brian R. Hogue
TX State Bar No. 24094725
Two Houston Center
909 Fannin, 37th Floor
Houston, Texas 77010
(713) 333-5100 Telephone
(713) 333-5199 Facsimile
adiamond@diamondmccarthy.com
rmuff@diamondmccarthy.com
brian.hogue@diamondmccarthy.com

Jason P. Fulton
State Bar No. 24040936
2711 N. Haskell Avenue, Suite 3100
Dallas, Texas  75204
(214) 389-5300 Telephone
(214) 389-5399 Facsimile
jfulton@diamondmccarthy.com

*Counsel for Canyon Furniture Company*